Our next case is number 14, 1856 Romag Fasteners, Inc. v. Fossil, Inc. Good morning, Your Honors. May it please the Court, my name is Jonathan Fryman on behalf of Romag. Your Honors, this is a case where 700,000 handbags with counterfeit components were sold over the course of years for millions of dollars by a company that designed the handbags, specified the components, controlled its manufacture at a captive factory in China, and chose not to monitor that factory for counterfeits, even though it knew that counterfeits were rife in China and that this very factory had infringed trademarks in the past. The jury found that Fossil had infringed... Well, Your Honor, the Merka Prova case recites the previous standard, which, of course, has been in numerous Second Circuit decisions because, as Your Honor pointed out, George Batch was the law of the circuit. But the Merka Prova case does not turn in any way on the question of willfulness, because there's no question that there is willfulness in that case. Do you want us to dismiss what they said as dictum? It is dictum, Your Honor, because willfulness is established there. And in Fendi, as I'm sure Your Honor knows, the Second Circuit pointed out that the Second Circuit has not addressed the effect of the 99 amendments, let alone the 96 amendments. So the question is, I mean, if Your Honor looks at the law... So you agree that there's nowhere that the Second Circuit has directly addressed? The Second Circuit has never directly addressed the language of the 1999 amendment. Or put differently, Your Honor, the Second Circuit has never directly addressed the statute as it exists now. It has never addressed the current text of the Lanham Act. And that's, of course, what the Second Circuit would be asked to address and what this court needs to address. This court needs to address the current text, and it needs to predict what the Second Circuit would do when confronted with the current text. Now, I gave Your Honors a supplemental authority letter a few days ago about a case decided by the Second Circuit just before Christmas. And I think Maimonides was particularly enlightening. Well, Maimonides says when Congress uses two different terms in the same portion of an act, in the same act... Standard canons of statutory instruction. It is a standard canon of statutory interpretation. And the important thing here, Your Honor, is that... Is that helpful when the two different parts of the statute are enacted at the same time, which is not the case we have here? Well, it actually is the case here, because the public law of... But they didn't change the portions you're relying on from previous portions. They just added in another damages remedy to apply to the dilution cost, right? They did add in another remedy, Your Honor. Essentially... And I think you agree that prior to this amendment, it had generally been the law for the portions affected by your case that willfulness was required. In the Second Circuit, yes, Your Honor. In almost all circuits. No, Your Honor. In fact, at the time of the 1999 amendment, there was a split among the circuits. I believe it was four to three at the time. Certainly the 11th Circuit... But suppose that's the case. Why doesn't the 1999 amendment suggest that Congress didn't want to change anything and intended to leave it as it was? Well, Your Honor, to be fair, I think that what Congress was indicating in the 1999 amendment was that it had always understood there not to be a requirement of willfulness in this context. And Judge Hughes just... How did it do that? Well, it did that... Your Honor, we need to look at the text of the Act as a whole. And the first thing we need to look at, and this is in regard to Judge Hughes' question, is, yes, they added a second part, but they deleted the old part and added... That portion of the public law, which, of course, goes into the statute, has this very clear distinction between the requirement of an infringement and a willfulness... I think they just repeated some of the language from the old law. They didn't change it. But, Your Honor, they chose to delete it. Wait, wait, wait, wait. I'm sorry, Your Honor. With respect to the 43A application, they didn't change the language. They just repeated it when they enacted this new language with respect to dilution, right? They did repeat it, but first they removed it. That is, they didn't just leave it in between the need for infringement, for ordinary infringement actions, or willful infringement for dilution actions. And that is the old... That's exactly where the old canon that Judge Wallach was referring to, and that's referred to in Maimonides, comes into play. And, of course, we have to read this in the context, not only of the 99 amendments, but, Your Honor, in the 96 amendment, in the statutory damages section of the Lanham Act. It's very clear that... In page 40 of your brief regarding the 96 amendment, you say it demonstrates that a showing of willfulness isn't required. Did you make that argument before the district court? And, if so, where is it in the record? We've argued all along, Your Honor, that 1117A does not require willfulness. And we are pointing to this textual support. We've always made a structural argument... Did you make the additional C argument to the district court? I'm not sure whether we did, Your Honor. That means you didn't. It means I'm not sure whether we did. Your Honor, there's further textual support. 1117B itself allows treble in profits for willful infringement, making clear that Congress distinguishes between enhanced damages. And this is just like the past in context. That's your theory, that if Congress had wanted to approve the Second Circuit approach, it would have put the same willful violation language in with respect to 43A? Your Honor, if Congress wanted to make willfulness a prerequisite for profits, it would not have distinguished between the need for willful infringement for profits in the dilution context and plain infringement in the ordinary context. But that's not exactly what they did. What they did with respect to dilution is they applied the willfulness requirement both to profits and to damages. So that's different from the 43A approach as reflected in Bosch, where the willfulness requirement only applies to profits and not to damages, correct? Well, Your Honor, even in... Is that true? It is true, Your Honor. But even in 1117A, in the references there, which are to 1111 and 1114, there are these exceptions that are built into 1117A. And they contain targeted exceptions for innocent infringers, someone who marks something on packaging, a domain name registration. Just to stick with my point for a moment, it is not the case that Congress would have achieved its objectives in agreeing with the Second Circuit simply to put the willfulness requirement in with respect to 43A, because that would have gone further than Congress clearly wanted to go, because it would have created a willfulness requirement for damages as well, right? Well, Your Honor, Congress, in passing the statute, knew that it was saying willful... You're not responding. I'm sorry, Your Honor. I meant to be responding. I believe that Congress was... That all of these different parts of the statute are manifesting Congress's intent that there be a difference and a heightened requirement for dilution. And there are heightened requirements for other things, for treble damages, for higher statutory damages, for treble profits. All of them require willfulness. And they're all superfluous if we assume that there's a willfulness requirement for profits across the board in the case of ordinary infringement. And Congress's enactment in 1999 in having these two... one not modified by willful is consistent with everything else in the statute. It's consistent with 1117B and the treble profits. It's consistent with 1117C and the 10 times higher statutory damages. And it's consistent with the targeted exemptions for innocent infringers in very particular contexts, but not across the board. Your Honor, I have to add... Let me ask you a housekeeping question before you add something. The last seven pages of your briefer cell argued patent infringer cannot invoke latches when the victim has filed suit within the applicable period. So doesn't SCA hygiene products sort of moot your argument in that section? SCA hygiene answers the question for the circuit. We preserved the argument because obviously it's expected that a circuit petition will be filed in that case, but there's no reason to re-argue what the en banc court has already decided there. Again, that case came down during the pendency of this appeal. I want to turn also... Well, I see I have six minutes remaining, which is what I'd like to preserve for rebuttal. Okay. Thank you. Mr. Dupler, is that how you pronounce it? Yes, Your Honor. Thank you. May it please the court. Jeff Dupler on behalf of Fossil and Lacrosse Appellants. As this court's already observed, the Second Circuit has long held that principles of equity in the Lanham Act in Section 1117A preclude the award of profits of the defendant's profits, which is often an extraordinary, punitive, and largely disproportionate award, unless willful infringement has been shown. The Bash Court in 1992 established this principle. They went through a Second Circuit precedent. They went through a Supreme Court precedent dating back to 1916. If Congress had intended to abrogate the Second Circuit's rule, how would it have done it? Well, Your Honor, if Congress had intended to abrogate the rule of the Second Circuit and of other circuits that apply that same principle, they could have done so in so many words and simply said, willful infringement is no longer required for an award of defendant's profits under 1117A. But that's an odd kind of sentence to put into a statute. That's not the way Congress usually writes statutes. They usually write them on what's required to show a violation. And here, the language just says you need infringement, not willful infringement. Well, it does. What it says is that the three monetary remedies set forth in 1117A are all subject to principles of equity. And obviously, if a plaintiff is seeking its own actual damages, those principles of equity apply differently. If it's seeking costs, certainly it applies differently. However, if it's seeking an award of defendant's profits, then those principles of equity, long developed through the common law tradition and codified in the Lanham Act, and then developed through the courts, hold that willful infringement is required. In some circuits? In some circuits. Has this circuit conflict been presented to the Supreme Court for a resolution? Have there been cert petitions? There has been one cert petition filed in the Contessa case in 2005. A cert was not granted, and obviously no conclusions could be drawn from that. Which circuit did that come from? I believe the Fifth. I'm not sure. I believe the Fifth. The case was called Contessa. Do they require willfulness or not? The Fifth Circuit, in the Quick Technologies decision in 2002, continued to apply the public need factors. The answer to your question, Your Honor, is that they don't have a threshold requirement, although they consider willfulness to be an important factor and a strong factor. The Fifth Circuit in 1998 applied the Pebble Beach factors, which included, very similar to the George Bash factors, but didn't have a threshold requirement. Other circuits, certainly the First Circuit, with respect to discouragement of profits under an unjust enrichment theory, deterrence theory, that circuit certainly would apply it. The Tenth Circuit has applied it post the 99 Amendments. Your Honor has asked some questions about those 99 Amendments, and I think the Court recognizes that those Amendments were designed, by definition, to address the dilution remedy discrepancy that had developed when they passed the Dilution Act three years earlier. The legislative history is replete with explanations about it. The title of the Act suggested Representative Cummings' remarks express exactly what Congress was doing. These concepts of statutory construction that, for instance, the Third Circuit applied in Banjo Buddies, are unnecessary in terms of where Congress has given a clear expression of their intent as to what they were trying to do in passing that Act. This Court has also recognized already that the language that George Bash addressed was not in any way changed. It was still a violation of the Act, subject to principles of equity, and those subject to principles of equity remained. How do you agree that Congress in the 1999 Amendments meant to leave things in the mess that they were before? Well, I don't know that it was a mess. It was certainly that different circuits took differing views. All circuits, for decades, have considered willfulness to be an important factor. Is your view that they intended to leave things alone? It's my view, Your Honor, and Fossil's view, that, in fact, Congress did not intend to do anything. To leave things alone, their intent was to fix a drafting error that had resulted from a statutory cause of action they created three years earlier. And so their intent was focused strictly on the Dilution Act, and the legislative history supports that. To the extent that this Court were to take up Romek's offer to predict what the Second Circuit would do, 12 district courts, including our court and the court below, have addressed this issue. And they've squared up and analyzed the legislative history. They've taken the heavy lifting that some of the other circuits, the Third, the Fourth, and Fifth, haven't done, and gone behind the legislation to figure out what exactly the 1999 Amendments were all about. And 10 of the 12 district courts that have addressed this have come to the conclusion that the George Bash Standard continues to apply, and that willfulness continues to be a threshold requirement. I'd like you to address, because I find it disturbing, and I intend to ask your opposing counsel about it, the history of Romek's history of obtaining temporary restraining orders, and the similarity, the shocking similarity, if I may, in the language of the various applications in which the corporate officer, President, I believe, claims that he is surprised and shocked each time, and the timing of them. Yes, Your Honor. As the Court below made clear in both its memorandum decision and in its post-trial order, August 8th, the first one being July 2nd, Romek, three of the four years prior, this case was brought originally in 2010. In 2007, in the same district court, and it turns out in front of the same district judge, this plaintiff came before the court and said, I need a temporary restraining order because I'm shocked and surprised to find counterfeit versions of my magnetic snap fasteners in products on the shelves. And 22 days later, that case was settled lucratively. And the timing of them as well. I'm sorry, yes, Your Honor. It was timed shortly before Black Friday. During the trial of this case, plaintiff's principal testified, although he was well familiar with the... He testified that he had never heard of Black Friday despite his involvement in the retail apparel industry for over 15 years. In addition, this case was brought... The complaint was filed on November 22nd. The TRO motion was brought on November 23rd. Black Friday was that Friday. And the similar principle was held. The same approach, the same attempt to extract a lucrative as the court below found. The inescapable conclusion was that they strategically timed the suit to increase their leverage and to extract a profitable settlement. And in 2008, a similar lead-up had happened where once again in November, shockingly and surprisingly, this plaintiff discovered counterfeit versions of what it thought were counterfeit versions of its snaps in products on shelves, this time at a store called Designer Warehouse. And because it turned out at trial that the friends... They were friends. The plaintiff's principal were friends of the person who had supplied the snaps, there was a settlement reached. But no lawsuit was filed in that case. So in 2007, 2008, and in 2010, all in November, all before Black Friday, cases were either brought or threatened to be brought. Seasoned assist letters were sent. Even if this is kind of shady litigation tactics, you could avoid this by not purchasing counterfeit snaps and exercising better control on your part too, couldn't you? Yes, Your Honor. You're not disputing that these are all counterfeit and that you're liable. We are not disputing that the jury determined they were counterfeit under the definition of counterfeit under the Lanham Act and we're certainly not disputing that the jury found us to be liable. We never purchased any snaps. The manufacturer they described as a captive manufacturer is far from it. The record shows that it was a third-party manufacturer pursuant to an agreement we had done business with for 20 years, independently owned, unlike the Monsanto case, for instance, where the factory at issue was truly a captive factory. This was a third-party manufacturer who made independent purchasing decisions. The type of snap or brand of snap was never specified. And so Fossil never purchased any of these snaps. Your Honor has mentioned the, I'm sorry, opposing counsel mentioned the Fenney decision. Obviously, the Fenney decision is a summary decision. It was used in the brief to suggest that the Second Circuit has somehow acknowledged there is this open question that's just not the case. The Second Circuit in Fenney was simply acknowledging that counsel was making an argument and that the question had been raised to them, but they didn't need to decide it because, of course, willfulness had already been found on summary judgment in that case. And finally, the briefly addressed, we received late in the day on Wednesday, the Mamamides Supplemental Authority. We agree it stands for a very unremarkable proposition. It doesn't confirm anything or affirm anything. It simply cites a 1983 Supreme Court case. It stands for the unremarkable proposition that different words mean different things. And if Your Honor has any questions with respect to the willfulness, non-willfulness argument in the 99 amendments You might have a harder case if Congress had enacted this statute all at once and used willful in one part and not willful in another. That's absolutely the case, Your Honor. If this was a fresh statute that had been enacted with no prior history, no common law history, no legislative history, all fresh, written as it appears now, that's absolutely the case. However, that's not the case. This is a statute that has a long, rich history both interpretations from the Supreme Court and many interpretations from the Second Circuit. And I see that I've gone into my reserve, so if you have any further questions, please let me know. All right. Thank you. Your Honors, I'd like to start with that last point, the question of what the courts would do and what this court should do. Mr. Freeman, I want you to start with what I asked, which is I want you to address the pattern of business with which your client acted, the filing of word-for-word similar affidavits at almost precisely similar times in the sales year in which the president of your clients swore to certain things that appeared to me to be patently in bad faith. Yes, Your Honor. The district court found that the principle of ROMAG had, in fact, not been truthful on the stand with regard to that. And as a result, she said that she would reduce the award by 18%, which was the amount of time from when he learned that these were, in fact, counterfeit snaps until the time that he sued, because it was her view that he had timed the suit to come before Black Friday, so she would not allow a recovery of profits or damages for that period. That's not on appeal before this court, in part, obviously, because of the standard of review of such things. So that's the answer as to that, Your Honor. I was not trial counsel, but it appears there was a boilerplate affidavit that had been previously used and perhaps to save expenses was used again. I honestly don't know. But in any event, the court already took care of that, and that's not an issue on review. I do want to go to this question of all at once. Of course, it would be the Second Circuit's obligation, and it's this court's obligation to construe the statute as it stands now all at once. It has to be construed harmoniously, not in a piecemeal manner. And all at once there are, of course, exceptions for innocent infringers and enhanced damages for willful violators. So it can't be that profits can be available only if there is willfulness. It can be and is an important factor in the Pebble Beach analysis that Mr. Dupler mentioned and in the analysis that seven of the circuit courts now use, which is the traditional equitable balancing that the Supreme Court recently affirmed in Octane Fitness is the correct approach to use when looking at Congress's textual commitment to equity. And here we have multiple textual commitments to equity in the statute. It says, there's specific mention in 1117A to the circumstances of the case to what the court believes is just. And, of course, there's the distinction between infringement and willful infringement. As to the jurisprudential issues, the question of what this court should do in light of the language of the statute, the now superseded language of the statute. I would point out that other circuit courts have done the same thing. The Third Circuit in Banjo Buddies, the Third Circuit had previously held that willfulness was a requirement. It then said, as the Second Circuit did in Fendi, the question's open. And then the next time the question came before it and it needed to be resolved, it said, willfulness is not required. That's clear under the language of the statute. As things stand right now, seven of the courts of appeals have that position. Only one, the Tenth Circuit, has after the 1999 amendment come to the conclusion that the old willfulness standard still stands. Now, with regard to the question of the principles of equity and whether prior to the enactment of the Lanham Act they required willfulness, I point your attention to the Mishawaka case by the U.S. Supreme Court, which was decided just four years before the Lanham Act was enacted. In that case, the Supreme Court clearly permitted and ordered profits in a trademark infringement case despite there being no willfulness. So we're supposed to disregard the Second Circuit decisions because a Supreme Court decision that came long before them is inconsistent with that? No, Your Honor. I'm responding here to Mr. Duklar's argument that somehow the principles of equity were brought into the statute at the time of its enactment and those necessarily require willfulness. I'm saying we know that's not true, but what I'm asking you to do is to say that the Second Circuit, on the language of the statute as it currently exists, and under the Supreme Court's directive in octane fitness, that discretion be given to the courts and not restrained through overly rigid frameworks as a willfulness requirement is on this statutory text, I'm asking you to find that willfulness is not required, that the Second Circuit would not find it required. Returning for a moment to the jurisprudential question, because obviously this court is concerned about its long-standing principle of interpreting the law in accord with the regional circuit when it's a non-patent doctrine. And here, I want to point out again that Banjo Buddy is switched and it didn't need to go en banc to do so. And the Second Circuit precedent itself, as we've pointed out in our briefs in the last couple of weeks, in the Mercorus case, United States v. Mercorus, and in the Prober case, United States v. Prober, has said when an argument wasn't presented to a prior panel or when the law has changed in the interim, a panel does not need to go en banc in order to come to a different conclusion than the previous panel. In both Prober and Mercorus, the court said we, a subsequent panel, can interpret and decide what was never interpreted or decided by our court in the past, by a previous panel of our court. They did so, and in neither of those cases was there a statutory change. In one case, it was just different arguments that hadn't been presented to the court, and in the other it was an intervening change in precedent, in Supreme Court precedent. Here we have something clearer, I would posit, which is the statutory change itself. And that is why, of course, some of the district courts in the Second Circuit have themselves found themselves able to find that under the current language of the LATIMAX there is no bright-line, rigid, formalistic willfulness requirement. It is merely as the overwhelming majority of circuits now hold one of the factors for the court to consider when balancing the equities. Unless there are any further questions. Thank you, Your Honors. Your Honors, I understand the cross-appeal was not discussed, and my rebuttal would be limited to that, unless the court has any questions regarding the cross-appeal? No, just that it seems to be an improper cross-appeal because it's giving another ground for not awarding lost profits. Well, Your Honor, it was done, it's certainly a conditional cross-appeal. We did not understand it, and we didn't certainly intend it to be considered an improper cross-appeal. It was done as a protective measure in the event, and the unlikely, hopefully unlikely, event of a remand, because the deterrence award, or the advisory deterrence award that was there, was seriously flawed, and if there were to be a remand, the district judge would need to understand, hopefully this court would instruct it so. We were trying to expand our rights under the judgment, and decrease ROMAX in the event of a remand, and strictly in the event of a remand. Okay. Thank you, Your Honor. Thank you both, counsel. The case is submitted.